## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SEAN E. McDONALD, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case. No. 21-CV-03060-SAC |
| ) | |
| HAZEL M. PETERSON, *et al*. ) | |
| ) | |
| Defendants. ) | |
| ) | |

### MEMORANDUM IN SUPPORT OF DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

In his Complaint and Request for Injunction, Plaintiff Sean McDonald, an inmate currently incarcerated at Hutchinson Correctional Facility (HCF), alleges that on February 18, 2021—while housed at Norton Correctional Facility (NCF)—Defendants Hazel Peterson, Sara Collins, and Jedediah Ewing violated his First Amendment right to freedom of speech and his Fourteenth Amendment rights to due process and equal protection under the United States Constitution. (Doc. 1 at 3-4). Specifically, McDonald claims Defendants erroneously failed to process a letter he intended to send to the Kansas Bureau of Investigation (KBI) as "official mail," pursuant to K.A.R. § 44-12-601(a)(1)(B). (Doc. 1 at 5). McDonald argues that Defendant Ewing violated his rights when he failed to deem his letter "official mail," and Defendant Collins violated his rights because she "could have provided a remedy to the abuse but chose not to[.]" (Doc. 1 at 5). He seeks injunctive relief ordering Defendants to comply with K.A.R. § 44-12-601 and $100,000 in punitive damages and filing costs. (Doc. 1 at 5).

Defendants move this Court for summary judgment in their favor based on McDonald's failure to exhaust his administrative remedies, which is necessary to lodge a claim under 42 U.S.C. § 1983. In the alternative, Defendants move this Court to dismiss McDonald's claim as moot.

1

# STATEMENT OF MATERIAL FACTS AS TO WHICH
# NO GENUINE ISSUE EXISTS

1. Sean McDonald is a 5'2", 198-pound inmate who was housed at NCF on February 18, 2021. (KASPER Report, attached as Exhibit A at 1, subject to judicial notice as per Fed. R. Evid. 201 and *O'Toole v. Northrop Grumman Corp.,* 499 F.3d 1218, 1225 (10th Cir. 2007)).

2. On February 18, 2021, McDonald submitted a letter to NCF staff for mailing that was addressed to KBI Director, Kirk Thompson and marked as "Legal/Official mail." (Doc. 1 at 4-5).

3. McDonald's letter was returned to him unopened with a note signed by Special Agent Supervisor Ewing stating that the letter was not considered official or legal mail. (Doc. 1 at 5; Doc. 15 at 25, Ewing affidavit at ¶ 3 (attached as Exhibit B).

4. McDonald showed Unit Team member Dugan the rule pertaining to inmate mail, and she agreed it was official mail, so she took the letter back to Ewing. (Doc. 1 at 5).

5. Upon receiving the letter back, Ewing again declined to mail it. (Doc. 1 at 5).

6. On February 22, 2021, McDonald filed a Form 9 (Informal Resolution) with Ewing, asking for a meeting with him "to discuss what constitutes Legal/Official mail … since there seems to be some confusion." (Doc. 15 at 37).

7. On February 23, 2021, before Ewing responded to McDonald's Informal Resolution filing, McDonald filed an emergency grievance with NCF Deputy Warden Collins. (Doc. 1 at 5; Doc. 15 at 38-39, Collins affidavit at ¶¶ 1, 3 (attached as Exhibit C).

8. On February 24, 2021, Collins reviewed McDonald's emergency grievance, and she determined it was not an emergency and returned the grievance to McDonald's Unit Team counselor to process as a regular grievance. (Doc. 15 at 16, 23, 39, Collins affidavit at ¶ 5).

9. On February 25, 2021, Ewing responded to McDonald's Informal Resolution filing,

2

stating that "[w]e will try to meet with you some time [*sic*] next week." (Doc. 15 at 37).

10. On February 28, 2021, McDonald filed his § 1983 lawsuit (Complaint and Request for Injunction) in this case. (Doc. 1 at 1, 6).

11. On March 8, 2021, Unit Team Manager Braun responded to McDonald, upholding Ewing's initial assessment of the letter. (Doc. 15 at 23).

12. McDonald then took his grievance to the warden, who received it on March 9, 2021. (Doc. 15 at 16).

13. On March 17, 2021, Warden Peterson responded to McDonald, stating that upon further investigation she determined that Ewing erred, and McDonald's letter should have been processed as "official mail." (Doc. 15 at 15, 42-43, Peterson affidavit at ¶¶ 3-4 (attached as Exhibit D).

14. Peterson also informed McDonald that, "[i]n an attempt to prevent future errors of this nature, those in charge of processing outgoing offender mail at NCF have been made aware of this error." (Doc. 15 at 15).

15. On March 26, 2021, McDonald mailed an appeal of his grievance to the Secretary of Corrections. (Doc. 15 at 12).

16. On April 7, 2021, the Secretary's designee responded to McDonald's appeal, noting that "[c]orrective action was taken regarding Staff review and reinforcement of the definition of Official mail[,]" and that "Special Agent Ewing is doing the job assignment he was tasked with and we find no validity in the claim he has harassed you." (Doc. 15 at 11).

## QUESTIONS PRESENTED

I.     Are Defendants entitled to summary judgment because McDonald failed to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA)?

II.     Alternatively, is McDonald's claim moot because ultimately his complaint was resolved through the operation of Kansas' grievance process?

## ARGUMENTS AND AUTHORITIES

I.     **Defendants are entitled to summary judgment because McDonald failed to exhaust his administrative remedies.**

Summary judgment is required when pleadings, affidavits, and any discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine issue exists, courts will view evidence in the light most favorable to the nonmoving party and will accept only reasonable inferences. *See Allen v. Muskogee*, 119 F.3d 837, 839-40 (10th Cir. 1997).

However, the nonmoving party cannot create a genuine issue of fact by making allegations that are clearly unsupported by the record as a whole. *Scott v. Harris*, 550 U.S. 372, 378-81 (2007). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way[,]" and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When there is no genuine dispute of material fact on an essential element of the nonmovant's claim, then summary judgment must issue in the moving party's favor. *See Sports Unlimited, Inc. v. Lankford Enterprises, Inc.*, 275 F.3d 996, 999 (10th Cir. 2002).

    A.   *Exhaustion of administrative remedies is mandatory under the PLRA.*

The PLRA requires an inmate to exhaust all available administrative remedies before

bringing a § 1983 claim about prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "An inmate properly exhausts a claim by utilizing each step the prison holds out for resolving the claim internally and by abiding 'with an agency's deadlines and other critical procedural rules.'" *Gray v. Sorrels*, No. 19-7060, 2020 WL 3120997, at *1 (10th Cir. June 12, 2020) (quoting *Woodford*, 548 U.S. at 90). "In other words, a prisoner must comply with procedural 'rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Williams v. Hill*, 422 Fed. Appx. 682, 684 (10th Cir. 2011).

The KDOC Grievance Procedure for Inmates is set forth in K.A.R. 44-15-101 *et seq.*, and applies "to a broad range of matters that directly affect the inmate, including … [c]omplaints by inmates regarding policies and conditions within the jurisdiction of the facility or the department of corrections; and … actions by employees and inmates, and incidents occurring within the facility." K.A.R. 44-15-101a(d). McDonald's § 1983 claim falls under this regulation because the offending conduct stems from his complaint about a policy within the jurisdiction of NCF or from the actions of NCF employees. *See Rigney v. Trapp*, No. 20-3106-SAC, 2021 WL 5833932, at *4 (D. Kan. Dec. 9, 2021).

An inmate must take four steps to complete the grievance process: (1) attempt an informal resolution with unit team members; (2) submit a grievance to an appropriate unit team member; (3) submit a grievance to the warden of the facility; and (4) appeal to the secretary of corrections. *See* K.A.R. 44-15-101(b), (d); 44-15-102(a)-(c).

### B. *McDonald did not complete the KDOC grievance process prior to filing his § 1983 claim.*

Here, the undisputed evidence shows that McDonald began the grievance process prior to filing his § 1983 lawsuit on February 28, 2021, but he did not complete it. Prior to filing his lawsuit, McDonald submitted an Informal Resolution and an emergency grievance. (Doc. 1 at 5; Doc. 15 at 16, 23, 37, 38-39, Collins affidavit at ¶¶ 1, 3). Deputy Warden Collins determined that there was no emergency, so the process went back to the Unit Team counselor. (Doc. 15 at 16, 23, 39, Collins affidavit at ¶ 5). But it was not until *after* McDonald filed his lawsuit that he (1) got a response from his Unit Team Manager; (2) took his grievance to the warden; and (3) appealed the warden's decision to the Secretary. (Doc. 15 at 12, 15-16, 23, 42-43, Peterson affidavit at ¶¶ 3-4).

All of these are required steps for exhaustion under the PLRA, *see* K.A.R. § 44-15-101(d); 44-15-102(a)-(c), and McDonald did not complete them before pursuing his § 1983 claim. *See* 42 U.S.C. § 1997e(a); *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) ("Under the [PLRA], a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court."); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA[.]"). This Court should grant summary judgment in Defendants' favor on this issue.

### II. **Alternatively, McDonald's claim is moot because ultimately his complaint was resolved through the operation of Kansas' grievance process.**

By utilizing Kansas' grievance process—albeit in an untimely manner—McDonald obtained the relief he sought, namely, that the letter he intended to send to the KBI be considered "official mail." Moreover, McDonald has not asserted that subsequent to his utilization of the grievance process, he was unable to have his letter processed as "official mail," as he originally

6

desired. Thus, his claim is moot.

"Article III delimits the jurisdiction of federal courts, allowing [them] to consider only actual cases or controversies." *Kan. Jud. Review v. Stout,* 562 F.3d 1240, 1245 (10th Cir. 2009). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona,* 520 U.S. 43, 67 (1997) (quotation omitted). "In deciding whether a case is moot, the crucial question is whether granting a present determination of the issues offered will have some effect in the real world. When it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot." *Kan. Jud. Review,* 562 F.3d at 1246 (citation and quotation omitted).

"The touchstone of the mootness inquiry is whether the controversy continues to 'touch[ ] the legal relations of parties having adverse legal interests' in the outcome of the case." *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) (internal citations omitted). "This 'legal interest' must be more than simply the satisfaction of a declaration that a person was wronged." *Id*. Further, "a plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured by the defendant in the future." *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1224 (10th Cir. 2009) (internal quotations and citations omitted).

Here, McDonald seeks an injunction against Defendants, compelling them to process his letter as "official mail." (Doc. 1 at 5). He claims NCF "continues to violate my constitutional rights and the provisions of K.A.R. 44-12-601 by refusing to send my letter to the director of the KBI." (Doc. 1 at 5). The problem is, McDonald requested this relief *before* he received a decision from Warden Peterson, where she both acknowledged that Ewing erred in not deeming McDonald's letter to be "official mail" and notified those in charge of processing outgoing offender mail at NCF of the error so it would not recur. (Doc. 15 at 15). There is also no evidence that McDonald

7

was unable to send his letter as "official mail" to the KBI after Peterson issued her decision. Moreover, McDonald is no longer housed at NCF. Thus, he cannot "demonstrate a good chance of being likewise injured by [Defendants] in the future." *Corder*, 566 F.3d at 1224. *See Jordan v. Sosa,* 654 F.3d 1012, 1028 n.17 (10th Cir. 2011) (stating "where a prisoner is no longer housed at the penal institution having the conditions of confinement that form the basis of his suit, declaratory relief—as well as injunctive relief—is ordinarily not available").

Indeed, in his grievance appeal to the Secretary of Corrections, which was filed after his § 1983 claim, McDonald stated that he "appreciate[d] Warden Peterson [*sic*] response and ensuring that this behavior doesn't happen in the future[,] but in reality it shouldn't have happened in this instance." (Doc. 15 at 13). In so stating, McDonald merely seeks "the satisfaction of a declaration that [he] was wronged," which does not constitute a proper legal interest to overcome the mootness of his complaint. *See Green*, 108 F.3d at 1299.

Simply put, Defendant Ewing's initial decision not to process McDonald's mail as "official mail" pursuant to K.A.R. § 44-12-601 was corrected through the operation of Kansas' grievance process, so a determination on McDonald's complaint will not have any effect in the real world. *See Kan. Jud. Review*, 562 F.3d at 1246. McDonald obtained the relief he sought. This Court should find his case is moot.

## CONCLUSION

Defendants request that this Court enter summary judgment on their behalf because McDonald failed to exhaust his administrative remedies under the PLRA. Alternatively, Defendants ask this Court to dismiss McDonald's case as moot.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

/s/ *Michael J. Duenes*
Michael J. Duenes, KS No. 26431
Assistant Attorney General
Memorial Hall, 2nd Floor
120 SW 10th Avenue
Topeka, Kansas 66612-1597
Phone: (785) 296-2215
Fax: (785) 291-3767
Email: michael.duenes@ag.ks.gov
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of January 2022, the above and foregoing was filed with the clerk of the court by using the CM/ECF system which will send notice of electronic filing to the following:

Natasha Carter
Kansas Department of Corrections
714 SW Jackson, Suite 300
Topeka, KS 66603
Natasha.Carter@ks.gov
*Attorney for Kansas Department of Corrections, Interested Party*

I also certify that a copy of the above was served via first-class mail, postage prepaid to:

Sean E. McDonald #113183
Hutchinson Correctional Facility-East
P.O. Box 1568
Hutchinson, Kansas 67504-1568
*Plaintiff, pro se*

*/s/ Michael J. Duenes*
Michael J. Duenes
Assistant Attorney General

9