IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SEAN E. MCDONALD,

    Plaintiff,

v.                                            Case No. 21-3060-JWB

HAZEL M. PETERSON, et al.,

    Defendants.

## MEMORANDUM AND ORDER

This matter is before the court on Defendants' motion for summary judgment and memorandum in support. (Docs. 17, 18.) Pursuant to D. Kan. R. 56.1, Plaintiff, who is proceeding pro se, was provided with the filings and the notice to a pro se litigant who opposes a motion for summary judgment. (Doc. 19.) Plaintiff previously sought and received an extension to file a response to the motion. (Docs. 20, 21.) Plaintiff's response was due on February 28, 2022, and Plaintiff has not filed a response or sought any further extensions. Therefore, the matter is ripe for review. Defendants' motion is GRANTED for the reasons stated herein.

**I.**    **Facts**

Plaintiff Sean McDonald is an inmate in the custody of the Kansas Department of Corrections (KDOC) and currently incarcerated at the Hutchinson Correctional Facility (HCF). At the time of the alleged violation of his rights, Plaintiff was incarcerated at Norton Correctional Facility (NCF). Plaintiff was transferred after this suit was filed. (Doc. 18-2 at 2.)

The following facts are undisputed. On February 18, 2021, Plaintiff submitted a letter to NCF staff for mailing. The letter was addressed to KBI Director Kirk Thompson and designated

1

as "Legal/Official" on a KDOC form.[1] (Doc. 1-1 at 1.) After review, Plaintiff's letter was returned to him by Defendant Ewing, stating that the letter was not considered official or legal mail. Plaintiff discussed this with Unit Team Member Dugan, referencing the rule pertaining to official mail. Dugan agreed with Plaintiff that it was official mail and took the letter back to Ewing. Ewing, however, declined to mail it. (Doc. 1 at 5.)

On February 22, 2021, Plaintiff filed an informal resolution with Ewing, asking to meet with him to discuss what constitutes Legal/Official mail. Before Ewing responded to the informal resolution, on February 23, Plaintiff filed an emergency grievance with Defendant NCF Deputy Warden Collins. On February 24, Collins reviewed the emergency grievance, determined it was not an emergency, and returned the grievance to Plaintiff's unit team counselor to process as a regular grievance. On February 25, Ewing responded to Plaintiff and told him that he would try to meet with him next week. (Doc. 15 at 37-39.) On February 28, Plaintiff filed this suit against Defendants alleging that they violated his First Amendment right to freedom of speech and his Fourteenth Amendment rights to due process and equal protection by failing to process the letter as official mail. (Doc. 1.) Attached to his complaint was the KDOC account withdrawal request stating that the postage was "Legal/Official," the letter to Thompson, and a fully exhausted grievance pertaining to Plaintiff's transfer to another facility after he contracted COVID-19 and the failure of the new facility to provide his medications ("medical grievance"). (Doc. 1-1 at 6.) Plaintiff did not attach his February 23 grievance to the complaint. Plaintiff's complaint does not include any claims regarding the medical grievance.

---

[1] According to the *Martinez* report, under KDOC policy, Plaintiff, as an indigent prisoner, could receive credit for the postage even if he did not have funds in his account as long as the mail was legal or official mail. Otherwise, Plaintiff would be required to pay for the postage or use one of the four stamps that are provided to him every month. (*See* Doc. 15 at 3-4.)

2

On March 8, Plaintiff's unit team manager upheld Ewing's decision. Plaintiff then appealed the grievance to the warden on March 9. On March 17, Defendant Warden Peterson responded to the grievance finding that Ewing erred in not processing the letter as "official mail." (Doc. 15 at 15.) Peterson also informed Plaintiff that NCF officials were made aware of this error in order to prevent any future errors. Plaintiff appealed his grievance to the Secretary of Corrections. On April 7, 2021, the Secretary's designee responded and determined that corrective action was taken in response to Plaintiff's grievance. Further, there was no validity to the claim that Defendant Ewing was harassing Plaintiff with respect to the mail designation. (*Id.* at 11.)

Defendants now move for summary judgment on the basis that Plaintiff failed to exhaust his grievance prior to filing suit. Alternatively, Defendants argue that Plaintiff's claim is moot.

## II.   Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004). Even when a dispositive motion is unopposed as in this case, the court remains obligated to determine if the summary judgment motion is properly supported. *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002). When a party fails to respond to a motion for summary judgment, as in this case, the court considers all properly supported facts admitted. D. Kan. R. 56.1.

## III.   Analysis

An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

"Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). The Tenth Circuit has also held that the PLRA requires that "a prisoner's claim be administratively exhausted prior to the filing of the action in court, rather than during the pendency of that action." *Price v. Shinn*, 178 F. App'x 803, 805 (10th Cir. 2006); *see also Porter*, 534 U.S. at 523–25; *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

For Kansas state prisoners, the administrative remedies require the inmate to first seek an informal resolution with prison personnel who work with the prisoner on a daily basis. K.A.R. § 44–15–101(b). If the informal resolution is unsuccessful, the inmate must progress through a three-level process that includes submitting a grievance report form to (1) the appropriate unit team member, (2) the warden of the facility, and (3) the office of the secretary of corrections. K.A.R. § 44–15–101(d). The procedure to follow at each level is described in detail in K.A.R. § 44–15–102.

Here, it is undisputed that Plaintiff filed his complaint prior to completing the grievance process. Plaintiff filed suit on February 28 and the grievance process was not completed until April 7. As stated by the Tenth Circuit, the PLRA requires that a prisoner complete the process prior to initiating suit and not during his suit. *Price*, 178 F. App'x at 805. As noted, this requirement allows the grievance process to potentially resolve the issue, which was apparently done in this case. Although Plaintiff was aware of this pending motion and the arguments raised, he has failed to file a response. For that reason, and because of the ultimate favorable disposition of his grievance, the court declines to consider whether Plaintiff's failure to exhaust could be cured. *See Ramirez v. Collier*, 142 S. Ct. 1264, 1276 (2022) (suggesting that an inmate could potentially cure this defect by filing an amended complaint after completing the grievance process but declining to "definitively resolve the issue" because the argument was not raised in the lower court.)

Because Plaintiff failed to exhaust his administrative remedies prior to filing suit, Defendants' motion for summary judgment is granted.

**IV.   Conclusion**

Defendants' motion for summary judgment is GRANTED.

IT IS SO ORDERED. Dated this 18th day of April, 2022.

                                                          __s/ John W. Broomes_____
                                                          JOHN W. BROOMES
                                                          UNITED STATES DISTRICT JUDGE